194 Cal.App.3d 280 (1987)
239 Cal. Rptr. 406
THE PEOPLE, Plaintiff and Respondent,
v.
STEVEN ALLEN DEAY, Defendant and Appellant.
Docket No. C001267.
Court of Appeals of California, Third District.
August 20, 1987.
*282 COUNSEL
Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and David Y. Stanley, Deputy State Public Defender, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel E. Carey and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
LONG, J.[*]
Following a court trial, defendant was found guilty of two counts of residential burglary (Pen. Code, § 459)[1] and one count of unlawfully possessing a hypodermic syringe or needle (former Bus. & Prof. Code, § 4143, now Bus. & Prof. Code, § 4149), and he was further found to have suffered two prior serious felony convictions (§ 667, subd. (a)), as alleged in the information. He was sentenced to state prison for a total unstayed term of fifteen years and four months, consisting of a four-year middle term for one burglary conviction, a one-year-and-four-month unstayed consecutive term for the second burglary conviction, plus two consecutive five-year enhancements pursuant to section 667, subdivision (a). For the unlawful possession conviction, he was sentenced to time served in the county jail. A $2,000 restitution fine was imposed.
On appeal, defendant contends (1) the evidence is insufficient to support one of the burglary convictions, (2) both burglary convictions must be *283 reduced to the second degree by operation of law, (3) the sentencing court improperly imposed two section 667 enhancements for prior convictions on charges not brought and tried separately, and (4) the restitution fine is excessive. We find merit in only the third contention and shall modify the judgment accordingly. As modified, the judgment shall in all other respects be affirmed.

FACTS[*]
.... .... .... .... .... .

DISCUSSION

I[*]
.... .... .... .... .... .

II
Defendant was charged in counts I and II of the information with "RESIDENTIAL BURGLARY, in violation of Section 459 of the Penal Code," in that he unlawfully "enter[ed] the inhabited dwelling and residence" of each victim. As to each count, the court returned a finding of guilty of "residential burglary." The court did not expressly recite, however, that the findings were for burglary of the "first degree." Defendant's sentence to the four-year middle term for each count is the middle term sentence prescribed for first degree burglary. (See § 461.) (1a) Defendant contends on appeal that, because the trial court failed to recite the degree of the crimes in its finding, both burglary convictions must be reduced to the second degree by operation of law. We disagree.
Section 1157 provides: "Whenever a defendant is convicted of a crime ... which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime ... of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime ... of which the defendant is guilty, shall be deemed to be of the lesser degree." (2) In the ordinary case, a finding that a distinguishable crime is of the first degree, if not expressly made in the findings, may not be inferred from the sum of facts found true by the trier. Under such circumstances, the degree of the crime must become the lesser by operation of *284 section 1157. (See People v. McDonald (1984) 37 Cal.3d 351, 379-383 [208 Cal. Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011]; People v. Flores (1974) 12 Cal.3d 85, 92-95 [115 Cal. Rptr. 225, 524 P.2d 353]; People v. Beamon (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal. Rptr. 681, 504 P.2d 905]; People v. Thomas (1978) 84 Cal. App.3d 281, 283-285 [148 Cal. Rptr. 532].)
(1b) At the time the offenses were committed, section 460 defined first degree burglary as including "[e]very burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building is burglary of the first degree. [¶] All other kinds of burglaries are of the second degree." An inhabited dwelling has been further defined to mean "... currently being used for dwelling purposes, whether occupied or not." (§ 459.)
We see no practical difference between burglary of an inhabited dwelling house and residential burglary. With the elimination on January 1, 1983, of the requirement that a first degree burglary be committed in the nighttime, all burglaries of residences are first degree pursuant to section 460. (People v. Rivera (1984) 162 Cal. App.3d 141, 148 [207 Cal. Rptr. 756].) Further, courts have consistently analyzed first degree burglary in terms of whether the dwelling was being used as a residence. (People v. Valdez (1962) 203 Cal. App.2d 559, 563 [21 Cal. Rptr. 764]; People v. Chavira (1970) 3 Cal. App.3d 988, 992 [21 Cal. Rptr. 764]; People v. Cardona (1983) 142 Cal. App.3d 481, 483 [83 Cal. Rptr. 851]; People v. Guthrie (1983) 144 Cal. App.3d 832, 838 [193 Cal. Rptr. 54]; People v. Fleetwood (1985) 171 Cal. App.3d 982, 987 [217 Cal. Rptr. 612].) Even the common understanding of residence, which connotes a place of abode of some permanency (Smith v. Smith (1955) 45 Cal.2d 235, 239 [288 P.2d 497]; Vanguard Ins. Co. v. Hartford Ins. Co. (1970) 9 Cal. App.3d 765, 768 [88 Cal. Rptr. 628]), cannot be differentiated from an inhabited dwelling unit for purposes of first degree burglary.
Not only has residential burglary become synonymous with first degree burglary, but also a prior conviction for first degree burglary is, as a matter of law, a burglary of a residence for purposes of enhancement. (People v. O'Bryan (1985) 37 Cal.3d 841, 845 [210 Cal. Rptr. 450, 694 P.2d 135]; see also People v. Alfaro (1986) 42 Cal.3d 627, 632, fn.3 [230 Cal. Rptr. 129, 724 P.2d 1154].) Notwithstanding that sentencing enhancements for prior convictions refer to criminal conduct as opposed to specific criminal offenses (People v. Jackson (1985) 37 Cal.3d 826, 832 [210 Cal. Rptr. 623, 694 P.2d 736]; § 1192.7, subd. (c)(18)), the fact that burglary of a residence has been defined as first degree burglary confirms that residential burglary is equivalent to a finding of burglary in the first degree.
*285 Lest there be any doubt the trial court made a finding of first degree burglary, the trial judge's reference to the charging language of the information before imposing sentencing ensures that the court lawfully fixed the burglaries at first degree.[4]
(3) Reference to a specific count contained in the information is a proper method of fixing the degree of the crime charged so long as the form of the verdict clearly indicates the court's intention to find the defendant guilty of the offense with which he is charged. (People v. Bratis (1977) 73 Cal. App.3d 751, 764-765 [141 Cal. Rptr. 45]; People v. Savala (1969) 2 Cal. App.3d 415, 418 [82 Cal. Rptr. 647], disapproved on other grounds in People v. Beagle (1972) 6 Cal.3d 441, 452 [99 Cal. Rptr. 313, 492 P.2d 1]; People v. Reddick (1959) 176 Cal. App.2d 806, 821 [1 Cal. Rptr. 767].) Thus in People v. Anaya (1986) 179 Cal. App.3d 828, 832 [225 Cal. Rptr. 51], a jury verdict finding a burglary was committed upon an inhabited dwelling and a residence was deemed a finding of first degree burglary despite the fact that the substantive definition of the crime, rather than the label of "first degree burglary," was mentioned in the verdict form.
(1c) In this instance, the trial judge's reference to counts as charged in the information leaves no doubt that the first degree was fixed for the committed offenses. As in Anaya, the trial judge should not be faulted for referring to the substantive definition of first degree burglary. Nor was it error for the court to refer to the information as the foundation for the substantive definition of first degree burglary. Unlike People v. McDonald, supra, 37 Cal.3d 351, 379 and People v. Williams (1984) 157 Cal. App.3d 145, 154 [203 Cal. Rptr. 562], reference to the charging document in the present case unequivocably sets forth the substantive elements of the greater degree crime.
In addition, the present case is further distinguishable from those cases where sections 1157 and 1192 required reduction of a charge to the lesser degree. Here, the trial court's intent to convict for first degree is demonstrated in a single finding and not implied by any subsequent findings, such as a finding on an enhancement (People v. Thomas, supra, 84 Cal. App.3d 281, 285) or by a finding of special circumstances. (People v. Beaman, supra, 8 Cal.3d 625, 629, fn. 2; see also People v. McDonald, supra, 37 Cal.3d 351, 382.)
*286 We therefore conclude that section 1157 does not operate in this case to reduce defendant's burglary convictions to the second degree. Not only was the trial court's finding of "residential burglary" equivalent to a finding of first degree burglary, but the court's additional reference to the information makes it certain that the findings were precisely set in the first degree.

III
The information alleged that defendant had been previously convicted of two serious felonies within the meaning of section 667, subdivision (a). Defense counsel stipulated to the priors, and the issue was submitted to the trial court on certified copies of pertinent court and Department of Corrections documents. Those documents disclose that, on December 29, 1982, in one proceeding, defendant pled guilty in the Redding Municipal Court to two counts of first degree burglary. The case was certified to the Shasta County Superior Court, which, on January 28, 1983, in one proceeding, entered judgment on both pleas. The trial court in this case found true both section 667 allegations and imposed two consecutive five-year enhancements. (4a) Defendant contends on appeal that one of these enhancements must be vacated because the two prior convictions were not "on charges brought and tried separately" (§ 667, subd. (a)). We agree.
The phrase "charges brought and tried" leaves no room for construction  it means to have formally brought an accused to account by means of complaint, information or indictment, and to then have adjudicated the accused's guilt or not. Charges brought and tried "separately" for purposes of section 667 means simply that prior formal proceedings leading to multiple adjudications of guilt must have been totally separate. (See People v. Ebner (1966) 64 Cal.2d 297, 304 [49 Cal. Rptr. 690, 411 P.2d 578] [construing similar language in California's former habitual criminal statute (former § 644)].)[5]
Several cases illustrate this fundamental point. In People v. Kanos (1969) 70 Cal.2d 381 [74 Cal. Rptr. 902, 450 P.2d 278], the court contrasted former section 644, which provided enhanced punishment for certain crimes for those "previously twice convicted upon charges separately brought and tried," with former Health and Safety Code section 11500.5 (now Health & Saf. Code § 11370.2), which provided enhanced punishment for those previously *287 convicted, without more, of certain narcotics offenses. The court stated, "The difference in the statutory language would seem to warrant the conclusion that under [former Health and Safety Code] section 11500.5 a prior consists of the determination of guilt on any count and that it is irrelevant that both priors may have been the result of a single trial...." (70 Cal.2d at p. 387.) Kanos impliedly acknowledged that the phrase "charges separately brought and tried" means a defendant may not be adjudged an habitual criminal when multiple prior convictions resulted from a single proceeding.
In People v. Wilks (1978) 21 Cal.3d 460 [146 Cal. Rptr. 364, 578 P.2d 1369], the defendant was found to have suffered four prior convictions within the meaning of former section 3024, subdivision (c), which provided a minimum prison term for those previously convicted of a felony. The defendant contended that only two prior convictions should have been found because three of the prior convictions resulted from a single, multicount information. The court rejected his contention, reasoning that under former section 3024, subdivision (c), it was immaterial how many prior convictions were suffered; one would suffice. The court also suggested, however, that the result may have been different had the defendant been adjudged an habitual criminal under former section 644 on the basis of multiple prior convictions "separately brought and tried." (21 Cal.3d at pp. 469-470, fn. 9.)
And in People v. Baker (1985) 169 Cal. App.3d 58 [215 Cal. Rptr. 293], the defendant challenged multiple enhancements under section 667.6, subdivision (a), for prior convictions arising out of a single criminal proceeding. He contended that, like section 667, section 667.6 could not be applied to impose multiple enhancements for multiple prior convictions arising out of charges not brought and tried separately. The court rejected the defendant's argument, citing the clear statutory language of section 667.6  section 667.6, in contrast to section 667, imposes an enhancement simply for each "prior conviction" of a specified sex offense, unqualified by a requirement that each prior conviction be based upon charges brought and tried separately. (169 Cal. App.3d at pp. 61-62.) Thus, by distinguishing sections 667 and 667.6, Baker recognized that section 667's qualifying language is not mere surplusage and impliedly acknowledged that the defendant's argument would have been meritorious had it arisen from an application of section 667.
The phrase "charges brought and tried separately" has a well established and long understood meaning. The Attorney General himself recognized that meaning in his "Guide to Proposition 8," in which it is stated, "Under subdivision (a) of Penal Code section 667, to qualify for enhancement a *288 prior conviction must have been `brought and tried separately.' Thus, a prosecutorial decision to charge and try different crimes committed by the same offender could, in theory, limit the future enhancement potential of the offenses involved. That is, charging two robberies separately and gaining convictions in two separate trials produces a potential for two separate enhancement in the future. A joint trial produces the potential for only one enhancement." (Attorney General's Guide to Proposition 8 (June 9, 1982) p. 9-3, italics added.) We find it somewhat disingenuous for the People to now argue that the phrase means something else. Yet the People rely on People v. Flint (1986) 180 Cal. App.3d 13 [225 Cal. Rptr. 323], for the proposition that the phrase "charges brought and tried separately" is nothing more than a restatement of the "separate occasion" rule (see In re Culbreth (1976) 17 Cal.3d 330 [130 Cal. Rptr. 719, 551 P.2d 23]).
In Flint, the defendant received one enhancement under section 667 for a prior serious felony offense to which he had pled guilty. The court rejected his argument that a guilty plea is not a conviction within the meaning of section 667. In reaching that conclusion, the court made the following statement about the application of section 667: "The purpose of the language `prior conviction on charges brought and tried separately' is to disallow imposition of the statutory five-year enhancement for each of several crimes committed in one criminal escapade. Or as stated by Mr. Witkin (2 Witkin, Cal. Crimes (1963) § 1008, p. 956), the words do not apply where several prior convictions `are based on several counts of a single accusatory pleading.' And see People v. Gump (1936) 17 Cal. App.2d 221, 223...." (180 Cal. App.3d at p. 20, italics in original.) The People seize upon that language and assert that defendant's sentence here could be properly enhanced twice for two prior convictions, despite the fact that they were adjudicated in the same criminal proceeding, because the prior underlying offenses were not committed in "one criminal escapade." Aside from the fact that there is no evidence in the record to support the assertion that defendant's prior burglaries were not committed on a single occasion, we reject the People's argument for two reasons. First, the language in Flint on which the People rely is gratuitous. The defendant's sentence in that case was enhanced by only one prior conviction, and his contention on appeal went only to the effect of his guilty plea to the prior offense. Not at issue in that case were multiple enhancements based on multiple convictions arising out of a single criminal proceeding. Nor was the issue whether the defendant had committed multiple prior offenses in one criminal escapade. (5) It is well established that the issues decided in a case are those presented. "The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning. [Citations.]" (McGee v. Superior Court (1985) 176 Cal. App.3d 221, 226 [221 *289 Cal. Rptr. 421].) Accordingly, the language in Flint on which the People rely is pure dictum.
Our second reason for rejecting the People's argument is more fundamental, however  Flint's dictum appears to recite an incorrect statement of the law. Flint ignores the plain meaning of the words "charges brought and tried separately" and, in the process, blurs the distinction between the formal adjudicatory process and the circumstances surrounding the commission of underlying multiple offenses. Indeed, Flint misreads Mr. Witkin when it suggests that separateness within the meaning of section 667 means separate criminal escapades. What Witkin really stated, in discussing former section 644, was that the qualification "upon charges separately brought and tried" meant that "the [habitual criminal] Act does not apply where the [multiple] convictions are based on several counts of a single accusatory pleading." (2 Witkin, Cal. Crimes (1963) § 1008, p. 956.) In other words, one could not have been adjudged an habitual criminal under former section 644 (which necessarily required multiple prior convictions) unless the prior convictions arose from separate adjudicatory proceedings. Nowhere does Witkin suggest that whether or not the actual commission of the underlying prior offenses occurred on a single occasion (or "criminal escapade," as it were) is determinative of habitual criminality. Witkin cited People v. Gump (1936) 17 Cal. App.2d 221 [61 P.2d 970], which Flint then cited in turn. Therein appears to lie the source of Flint's confusion of the issues. In Gump, the defendant was convicted, upon a single information and in one adjudicatory proceeding, of three crimes arising out of the same incident. He contended that these convictions could not be used to find him an habitual criminal within the meaning of former section 644. Gump phrased the issue as "whether all three verdicts should stand, thereby designating appellant as one convicted of three criminal offenses within the terms of [former] section 644 of the Penal Code defining `habitual criminals' and therefore not eligible for release on parole." (17 Cal. App.2d at p. 223.) Construing former section 644's limiting phrase "upon charges separately brought and tried," the court concluded that it "clearly eliminate[d] the appellant from the operation of the section as he was not separately tried on the several charges...." (17 Cal. App.2d at p. 224, italics added.) The fact that the defendant's convictions in Gump arose from the same criminal episode was simply irrelevant to the issue decided. Accordingly, to the extent Flint's dictum would permit multiple enhancements for multiple prior convictions under section 667 regardless of how the prior criminal charges were formally adjudicated, so long as the underlying offenses were committed during separate "criminal escapades," we decline to follow it, as it constitutes an incorrect statement of the law.[6]
*290 (4b) We conclude that, as both prior convictions in this case were adjudicated in the same criminal proceeding, they were not "on charges brought and tried separately" within the meaning of section 667, subdivision (a), and imposing a separate enhancement for each was error. Defendant's sentence must be modified to provide for only one section 667 enhancement.

IV[*]
.... .... .... .... .... .

DISPOSITION
The judgment is modified to provide that defendant shall serve only one five-year enhancement pursuant to section 667, subdivision (a). As so modified, the judgment is affirmed.
Blease, Acting P.J., concurred.
SIMS, J.
I concur in all aspects of the majority opinion except for the discussion in part II concluding that "residential burglary" is the equivalent of first degree burglary. (But see Pen. Code, § 1170.95, subd. (c).)
It is unnecessary to reach that issue in this case because the trial court adequately found the defendant had burglarized an inhabited dwelling within the meaning of the first degree burglary statute, Penal Code section 460. *291 In a court trial, the degree of the offense must be fixed "before passing sentence." (§ 1192; People v. Flores (1974) 12 Cal.3d 85, 94 [115 Cal. Rptr. 225, 524 P.2d 353].) "Passing sentence" means such time as the court imposes sentence. (Flores, supra, at p. 93, fn. 6.)
In this case, before imposing sentence at the sentencing hearing, the trial court stated: "Mr. Deay, you've been convicted of a felony violation of Penal Code section 459, Residential Burglary as charged in Count I and also convicted of a felony violation of Penal Code section 459, Residential Burglary as charged in Count II of the information on file herein." Each cited count of the information expressly charged defendant had entered "an inhabited dwelling and residence." The court's remarks constitute an adequate finding that defendant burglarized inhabited dwellings. Since entry of an inhabited dwelling is the necessary criterion of first degree burglary (see People v. Brady (1987) 190 Cal. App.3d 124, 140 [235 Cal. Rptr. 248]), the court's findings at the sentencing hearing lawfully fixed the degree of the burglaries at first degree. (See People v. Anaya (1986) 179 Cal. App.3d 828, 831-832 [225 Cal. Rptr. 51].)
NOTES
[*] Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except Facts, Discussion I, and IV.
[*] Assigned by the Chairperson of the Judicial Council.
[1] All statutory references are to the Penal Code unless otherwise designated.
[*] See footnote, ante, page 280.
[4] Before imposing his sentence, the trial judge stated: "Mr. Deay, you've been convicted of a felony violation of Penal Code section 459, Residential Burglary as charged in Count I and also convicted of a felony violation of Penal Code section 459, Residential Burglary as charged in Count II of the information on file herein." Each cited count of the information expressly charged that defendant had entered "an inhabited dwelling and residence."
[5] Defendant cites People v. Thomas (1986) 41 Cal.3d 837, at page 841 [226 Cal. Rptr. 107, 718 P.2d 94], in support of this point. Thomas merely noted in its recitation of the facts of that case, and without elaboration or discussion, that the district attorney dismissed one of five section 667 allegations because he could not prove it resulted from "charges brought and tried separately." "[C]ases are not authority for propositions not considered." (People v. Burnick (1975) 14 Cal.3d 306, 317 [121 Cal. Rptr. 488, 535 P.2d 352].)
[6] In People v. Lobaugh (1987) 188 Cal. App.3d 780 [233 Cal. Rptr. 683], at pages 784-785, this court followed Flint's holding in rejecting the contention that a guilty plea does not constitute a conviction within the meaning of section 667. In so doing, however, we unfortunately recited Flint's dictum, which we now reject.

We also reject any suggestion that separateness for purposes of applying section 667 may be measured by some sort of section 654 analysis, viz, whether or not the offenses underlying the multiple prior convictions at issue were committed during an indivisible course of conduct and incident to a single intent and objective. (See Neal v. State of California (1960) 55 Cal.2d 11, 19 [9 Cal. Rptr. 607, 357 P.2d 839].) Not only does this type of analysis add superfluous language and meaning to section 667, it approves punishment under section 667 commensurate with a defendant's culpability for his prior offenses, not for his culpability as a recidivist. As such, it flies in the face of section 667's purpose, not to mention constitutional limitations upon section 667's application. (See People v. Jackson, supra, 37 Cal.3d 826, 833.)
We note further that, as to both priors, defendant here pled guilty, i.e., was "tried," under one case number. This, however, is not dispositive of our conclusion that defendant was not tried separately for his prior convictions. Although we agree that separate case numbers may be evidence that multiple priors were brought separately, we reject any suggestion that, despite the fact the defendant pled guilty to both priors at the same time they may be deemed to have been tried separately simply because of the fortuity of their bearing different case numbers. In our view, and consistent with its purpose, section 667 contemplates temporal rather than administrative separateness. The random assignment of case numbers is not only inconclusive of a defendant's having been tried separately within the meaning of section 667; to measure separateness in this manner also opens a door to prosecutorial abuse of the process.